business to take care of before we begin our arguments this morning. And I think you have a motion. Yes, Chief. Thank you. Good morning. I move the admission of Kerry Jean Begley, who is a member of the bar in good standing of the highest courts of Massachusetts and New York. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. And I'll just like to say, as usually happens, this is a very bittersweet moment because at the time, Kerry is getting sworn in, that coincides with her leaving. I mean, the good news for me is she and the bad news for her parents is that she's going to stay in D.C. at least for the time being. As the chief has frequently pointed out, the best part of our job here are our colleagues and our clerks. And today we have two young women who really exemplify what a wonderful experience it is to have these young people with us for a newly short time. Kerry is notable for me because she's my first Cornell Law School graduate and the first student of student because she had as a professor, one of my earlier clerks. She's a terrific young lady, a joy to be with. I didn't fret as much with her because she does so much fretting that it sort of gave me relief from my having to fret over the issue. But she's a dedicated, diligent, and terrific young lawyer and I wish her the best. Now, I believe your motion is granted. Thank you. And now I need to give the presiding chair to you because I need to make a motion. Judge Rainer, please proceed. I'd like to move the admission of Yuka Teraguchi, my fine law clerk who is a qualified member of the Bar of the State of California. And she'll be returning there to California soon. And it will be a great personal loss to me and a great loss to the court as well, although a great advance to our bar as she will be a tremendous contributor both here and abroad. And she kind of testified. She's historical. She's the first and probably the last non-American who will ever serve as a clerk of the United States Court of Appeals for the Federal Circuit. And as a first and a last, she has been the first and the best. Thank you, Yuka, and I move her admission. Motion is granted. And would you applaud and would you give the oaths of both? I swear and affirm that you comport yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. Congratulations and welcome to the Bar of the United States Court of Appeals. Thank you. Thank you. And now let's proceed with our first case this morning, LeBlanc versus the United States. Mr. Redding, you may proceed. Good morning, Your Honors. If it pleases the court, I'd like to start out by just reiterating as we did in our briefs that we do not believe Shell controls this case because the basis, the analysis, the argument behind this refund claim is substantially different. We are focusing in this instance on the fact that the claim is based upon the accrued basis that resulted from the income reported in the years after 1986. Shell was interpreted as a claim that we were challenging whether or not the sham determination or economic substance determination made in 1986 was correct. That is not the case here. We are not challenging that determination at all. So you're conceding the transaction was sham? Your Honor, I won't go that far. I will say for purposes of this case, I don't care. Is that fair enough? I have an ongoing dispute about the definition of economic substance versus sham, but it's not relevant to this case. Even if these transactions were shams, the net effect on the calculation of the final basis is irrelevant, and I believe that to be the case. But if they're sham transactions, the base is zero, right? From those, these partnerships involve many transactions. The only thing that was adjusted in the first year was the initial row crop transaction planting costs. The development costs and the development of real estate out in California over the next 10 to 15 years was never even challenged by the IRS. And it is the reported income on the partnership returns subsequent to 1986 that if you start with zero basis in 86 even, at the end of 86, you end up with a positive outside basis upon termination of the partnership interest. But isn't it still affected by a partnership item? Your Honor, any basis in a partnership is affected by a partnership item, just as any other affected item is affected by a partnership item. But that does not make the refund claim attributable to some aspect of the partnership item. Why not? Isn't it tied together? If it's affected by the partnership item, therefore it's attributable to the partnership. No, Your Honor, the distinction has to be kept. I mean, or else TEFRA completely falls apart. The entire TEFRA procedural scheme depends upon a recognition that there are certain things that are identified as partnership items defined in the code and the regulations. The TEFRA, the TEFRA partnership level procedures address those things. Now, it is true that those things may, in fact, have a bearing on things that are non-partnership items. A partner's basis in his partnership interest may, in fact, be affected by whether he inherited it, how he bought it, things completely irrelevant to the internal affairs of the partnership. Outside basis, and as this Court held in Jade Trading, outside basis is, in fact, a non-partnership item. Now, to compute that outside basis after the partnership has been in existence for years, you have to look at what the partnership was acknowledged and recognized as having done. What are the partnership activities that affect that calculation? Well, here what you have to do is to apply any partnership determinations that were made in partnership proceedings to that calculation and also take into account all of the non-partnership aspects. Otherwise, you could never have, I'm sorry, a partner could never file a claim for a loss on the basis of his partnership. How is this different than Shell, the facts in Shell? Because in Shell, the focus in the case, the focus in the pleading and the claim was slightly different. The fact situation is very similar. Right. But the claim was perceived as saying, we are saying those were not sham transactions. And the Court correctly held, we cannot go into the partnership transactions and recharacterize them. That is a partnership item determination. And therefore, if that's the way you're making your claim, we don't have jurisdiction. Well, it's not just a matter of how you make your claim. It's a matter of what has to be adjudicated. Well, it is. In both instances, there has to be a determination of partnership level on whether or not it was a sham. I find it hard to distinguish, therefore, between the Shell determination and the facts of this case. This case is saying, okay, if it's a sham, we're not challenging that. If the Court says that was a sham determination, we're not questioning that. In Shell, the partnership was determinated. And in this one, it's abandoned. That doesn't make any difference, Your Honor. That's not a distinguishing factor. I agree with Government Counsel on that. We don't purport that it is. It is a difference. It's a distinction. But that really doesn't change. So you were relieved of all your partnership liabilities, reducing the basis to zero. The problem with that is you were relieved of those partnership liabilities when the Court in 86 held that those partnership liabilities also had no economic substance. You can't say that we're going to treat the expenses that were allegedly paid with the proceeds of those debts as having no economic substance, but we're going to treat the debt as having economic substance when the decision itself says, in fact, that the debt has no economic substance and that the partnership crop transactions, the disallowance, is attributable to transactions that lacked economic substance. It doesn't say they actually lacked economic substance, interestingly. And the reason for that is that it's the failure of the debt to provide funds to have paid for those crops. There was an exchange of checks between the farmer lending money to the partnership and the partnership paying the money back to plant the crops. It is, in effect, not significantly different from a classic tax case from decades ago where a taxpayer, a cash basis taxpayer, borrows money from his bank to pay the interest on his bank loan. You can't take that as a current tax deduction. It has no economic substance as an independent payment of that debt. All you've done is increase the debt. You have essentially the same thing having happened here. The loans from the farmers to the partnerships that were purportedly used to immediately hand a check back to the partner where those checks weren't even fully covered in the accounts, those transactions lacked economic substance. They weren't sufficient to give basis, to give credibility to those transactions for tax law purposes. But if you disregard both, and I think what the law up to now has always said, is if you have a transaction which lacks economic substance, which is a part of sham, so if it's a sham, it still lacks economic substance. If you have a transaction which lacks economic substance, it is disregarded for federal income tax purposes. What the government is saying in this case is it's disregarded for federal income tax purposes that would benefit the taxpayer, but it's given complete credibility for income tax purposes to the detriment of the taxpayer. The only way you can get to the government's result in this case is to reduce basis for the partnership crop transactions that didn't have economic substance, and to further reduce basis for the debt that didn't have economic substance. They're treating it as if there had been no audit, no settlement, no decision. Their result is the same as if there had been no tax court decision, and that's not the case. If I may, Your Honor, this issue of non-deductible expenses is something that's a little difficult to get one's head around. I've got a really good example of where this becomes important. If I use a hypothetical, my partnership buys a building from the city of New York for $10 million. On its tax return, it deducts a $500,000 fee for facilitation of that transaction to an independent party. The IRS audits and denies the half a million dollar deduction. One, if the fee was not paid, and that was a totally bogus deduction on the return, there's no reality to it at all, then it is a disallowed deduction, but it doesn't reduce basis. There was no expenditure. Nothing really happened. You don't reduce your basis for something that didn't happen at all. If the $500,000 was paid to a city official for New York as an illegal bribe to facilitate the transaction, and it was paid, that is a non-deductible expenditure because it is an expenditure that was made that is not deductible under the law and specifically is in the definition of a non-deductible expenditure. For that, the partner's basis is reduced. Mr. Redding, in our particular situation, when they filed for a refund, what was the premise of the refund? That upon termination of that partnership interest, when he abandoned it, that his cumulative outside basis was equal to approximately $33,000. Would that be attributable to a partnership item? No more so, Your Honor, than any affected item has some connection with the partnership item. No, sir, it is not attributable to a partnership item. If it were deemed to be attributable to a partnership item, no partner could ever, ever claim a loss on his outside basis because his outside basis is always connected to the partnership items that are transpired. It's an element of it. In determining an affected item determination, what the court must do in 6222 and 7422H, the rules in the Internal Revenue Code, basically say that you have to take the partnership items as previously determined and apply them. If there's a decision, a settlement, or simply uncontested returns, you take that information, but you cannot question it. You cannot, in the partner-level proceeding, seek to make new determinations about what happened at the partnership level. But you would have to agree, though, that any distribution from the partnership to the partners would affect the basis, would it not? Certainly. If you have a loss, then it can be changing the basis of the partnership interest, or if you have a gain, it changes the partnership interest. That is correct, Your Honor. So in this particular situation, we have a basis which is going to zero. It is zero, right? At the end of 86, yes, Your Honor. If the impact on the partnership basis of the partner is determined by whether or not the partnership interest, the partnership effect is distributed or changes the basis, that's how the basis was changed to zero. At that time. At that time.  Because then over the next 10 years, as the partnership reported income, which was not questioned in any proceeding, that income reporting stands as filed on a return. That income reported increased that basis back from zero to roughly $33,000. Now, that increase in basis came about because of partnership items, but it is documented. It is not in reviewing whether or not the partner had sufficient outside basis to claim that deduction, which is what an outside basis claim is. The court has to take into account those adjustments, but it also would have to take into account whether or not the partner for something as obtuse as if the partner's spouse was in a community property state and had died. The partner's basis gets adjusted up or down to fair market value There are many things that affect the computation of a partner's outside basis. And in an affected item suit, what a district court must do, whether it's basis or whatever it is, is you must take the partnership item determinations as made and apply them and make any partner level determinations necessary to reach the ultimate conclusion. And again, if you went so far as to say that anything that was connected to a partnership item, it means the claim is attributable to partnership items, then it would be impossible for any partner to ever claim a deduction on his outside basis. I think I've heard that several times. Do you want to save your rebuttal time there? Yes, Your Honor, unless the court has any direct questions. Thank you. Let's hear from Ms. Snyder. Good morning. May it please the court. Just a quick update on some of the related cases identified by the parties in their briefs. The court may be aware the Supreme Court has denied certiorari in Shell, in Pratty, and in Deegan. And also the 53 appeals in this court that are related to Pratty, this court has summarily affirmed the judgments in those cases based on the opinion in Pratty. So moving on to this case. So is this a lead case for another issue or another aspect? This particular case, there are related cases that are stayed in the court of federal claims right now that would presumably be controlled by this case. But as far as I know, there haven't been any subsequent developments in those cases since we filed the briefs. So Mr. Redding tried to distinguish this case from Shell. Do you buy his distinction? No, we do not. This case is essentially indistinguishable from Shell, which of course was decided three weeks after the court of federal claims decided LeBlanc. And we believe that just like in Shell, the claims here are attributable to partnership items. And so they are barred by section 7422H. As this court explained in Shell, the claims are necessarily based on the assertion that the partnership transactions were not shams because you can't get a deduction for an investment in a sham transaction. So an element of the taxpayer's claim in this case would overturn a partnership item. So that's what this court held in Shell. And the same principle applies here because they're the same legal claims. The court of federal claims reasoning in this case is inconsistent with this court's later opinion in Shell. The court of federal claims suggested that there was no partnership level determination in Shell, but really as this court held, there was a determination in the FPAA that the transactions were shams. And that determination was not adjusted by the settlement agreement. And those are the same facts that we have here. The court of federal claims in this case also suggested that the fact that there was a tax court decision might be determinative of its jurisdiction. But in fact, in Shell, there was a tax court decision that contained essentially the same language. Our court in Shell didn't really deal with that aspect of it. Exactly. Because essentially what this court held in Shell implicitly is that the decisions didn't make a difference for purposes of jurisdiction because an FPAA that is not subsequently readjusted, a determination in the FPAA that's not subsequently changed is controlling. And this court actually held that in Keener as well. So therefore, based on Shell, the court lacked jurisdiction in this case as well. And it should have dismissed the case for lack of jurisdiction. There are some distinctions that the taxpayers have tried to put forward in this case. In their reply brief, they make much of the fact that in Shell they said their basis was a direct consequence of the settlement. And here they said it was an indirect consequence of the settlement. But obviously you can't create jurisdiction with semantic distinctions. And in any event... But is it still attributable to the partnership? It's attributable to the partnership because they don't... The claim is necessarily based on the assertion that the partnership transactions were not shams. And they don't have any basis without essentially adding back the disallowed  So yes, it's still attributable. And the court actually had analogous reasoning in its decision in Pratty, which was a different issue. It was section 6621C interest. But the court rejected as disingenuous the taxpayers' claims in that case that their claims were not a direct challenge to sham because their claims, if accepted, would necessarily invalidate the sham determination. And similar reasoning applies here. To the extent... Is Mr. Redding correct in saying that if, in fact, the basis of the interest that the partner has is affected by other than partnership items or attributable partnership items, this would be a different case? Well, you know, the example that counsel gave that outside basis could be... Somebody could get a step up at death after distribution from partnership, something like that, that isn't attributable to a partnership item. I mean, that's something that could be raised in an affected item proceeding. The difference here and the problem for their claims here is that they necessarily have to invalidate the sham transaction determination. So just because outside basis itself is an affected item doesn't mean that you can raise anything related to your basis in an affected item proceeding. And again, that's analogous to the Keener and Pratty type reasoning. The tax motivated interest itself is not a partnership item, but you can't challenge the sham part of that interest in a partner level proceeding because that would necessarily invalidate the partnership level determination. To the extent that the taxpayers suggest that their claim is different from the claim in Shell because their claim is based on their basis rather than on challenging sham. Well, the taxpayers made the same allegation in Shell that their loss resulted from their basis. Also, to the extent that they suggest that their basis is from a later year income, when you look at the facts, you see that it really wasn't. And the government discusses this in our brief on pages 23 to 24, that essentially what they did mathematically is they increased their basis by the amount of the disallowed loss. The difference between the basis that they claimed in their summary judgment brief and the government's calculation was the exact amount of their share of the disallowed loss. So when you look at the math, and this is an opposition to summary judgment, their basis number had been different in their complaint and their refund claim. And it was also different again on appeal. But at summary judgment, that's what they were doing. They just, they added back the amount of the disallowed loss. And then another point is that the taxpayers also conceded below that had the deductions been allowed in 1986, they would have a zero basis in 1999. And we quote that on page 24 of our brief. So really what they're doing is they're trying to convert the disallowed partnership deductions from 1986 into an allowable loss deduction for 1999. And that just doesn't work. Because of the sham determination? Right. Because there is a sham determination at the partnership level, and you just, you don't get a deduction for your investment if those were sham transactions. And, you know, of course, if this court were to disagree and were to find that the court of federal claims had jurisdiction, then the problem is on the merits. They had no basis. And the issues tie together because to the extent that they're suggesting that their basis is positive based on the later years income, it's not. Because what the court of federal claims did here is it gave them credit for all the later years income. The nature of that income was not litigated, but the court of federal claims essentially assumed it was legitimate income, gave them credit for it. But when you do the calculation, they still end up with a negative number at the end in 1999. That still works out to zero. And they have over the course of litigation, calculated their basis in different ways under different theories. But however you do it, you still end up at zero. If you increase, I mean, in the court of federal claims, they increase their basis by the amount of the disallowed loss. But that doesn't work because basis is reduced not only by allowable losses, but by non-deductible expenditures. And this case actually illustrates why that rule exists. If that rule did not exist, then in any tax shelter partnership, the partners could essentially get back at the end the loss that the IRS had disallowed for that year. So this case is a good illustration of why we have that rule. And there's a revenue ruling that we cite in our brief on page 47. It's revenue ruling 9610. That's an example of another situation. There was a loss on the sale of partnership property that was disallowed as a related party loss. And in that revenue ruling, it explained while the partners bases are nevertheless decreased by the amount of that loss, or else they'd just be able to convert it into an allowable loss later. And then on appeal, the taxpayers, they put forward a different theory, which was based on the liabilities language in the tax court's decision.  of course we say that they can't, that was a new argument raised on appeal and it was waived. But even if that argument were considered, that doesn't work either because they're treating the liabilities asymmetrically. They are including the full amount of the liabilities, which is $41,600 in their basis up front. And they're getting the full amount of the increase, but then they're saying because 80 something percent of those liabilities lacked economic substance, we only have to reduce our basis by a fraction of those liabilities. And that just doesn't work. And we go through the math a little more on page 43 of our brief, but that's where we explain that that's essentially what they're doing. And in their reply brief, they didn't actually dispute that that's what they were doing. But as the court of federal claims said, the liabilities were awash. It doesn't matter what the amount of liabilities were because they had no net effect. Whatever amount the liabilities increased basis by in the beginning was the same amount that they decreased basis by when the taxpayers were relieved of those liabilities. So the liabilities had no net effect and whatever the amount was. But the thing that you can't do is say we get 100% of the upside. We get $41,600 of basis increase, but then only $7,800 of basis decrease. It doesn't work. It violates section 752 and it also flies in the face of everyone's agreement below that liabilities were awash. But just to be clear, in the government's view, we don't reach those issues because under Shell, we're compelled to dismiss for lack of jurisdiction. That's exactly right. This is to the extent that this court were to feel that it needed to reach these issues and also to rebut some other of the taxpayers' argument. But yes, if the court were to find that it lacked jurisdiction, then we wouldn't be getting into any of this. And I guess just to respond to another allegation that the taxpayers have made, they seem to be suggesting that the losses of the partnership were entirely fictitious. They didn't happen and you don't reduce basis by something that didn't happen. And whether or not that's true, if there were no loss, they concede their suit because you don't get a deduction for a loss that didn't actually occur under section 165. So that theory doesn't work either. The taxpayers, they've also made some points about what the expenses were and check swaps and things like that. And I guess I just want to make the point that that's actually not in the what those expenses were. But again, it doesn't matter because the court of federal claims lacked jurisdiction over this suit under Shell, which was issued after the court decided LeBlanc. Thank you, Ms. Schneider. Thank you.  In that case, Your Honor, I'll try to do it real quick. The first thing I'd like to say is that counsel is right that our number has changed slightly over time. And the simple reason for that is the government originally provided these refund claims and sent out instructions on how you could file a claim for your basis loss when the partnership terminated. And they were willing to accept in those instructions as a shorthand method of getting to that computation the recognition that a loss is going to be somewhere in the same range as what the original loss would have been. Now, that's just mathematical happenstance. Had the partnership reported three times as much income in the later years, there would be a positive outside basis. The government wouldn't even now be challenging. The fact that some portion of the deductions in the first year had been disallowed wouldn't really have any effect on it. Following the government's own instructions with regard to the computation. It is not a precise computation. That is correct. Pursuant to the argument that was then later raised that some of these deductions are non-deductible expenditures. In fact, I'm not even sure if it was in review of the opinion below. Something did occur to me and that is that there is a non-deductible expenditure that the partnership had. And it reported it as such. It was in the neighborhood of a quarter of a million dollars. And that is the organizational cost of the partnership. Those are non-deductible expenditures. And no partner can ever take his share of that as a part of his basis loss because that did reduce basis. So, to be accurate and correct, we again reduced what we thought the resulting number should be by that small piece of that distributive share of the non-deductible expenditure. It's computation that I should have made to begin with and I didn't, to be honest, I didn't pick up on it. But the disallowed... Final thought, Mr. Redding? Pardon? Do you have a final thought for us here? No, Your Honor. I just hope you carefully look at the question of jurisdiction versus merits though because I think the Tefra partnership law is starting to go into a tailspin. I really do. Thank you, Mr. Redding.